UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PINEBRIDGE INVESTMENTS
PARTNERS LLC, *et uno*,

                              Plaintiffs,

            v.

ABDULAZIZ GEYLAN ZAPSU,

                              Defendant.

No. 14-cv-6500 (RJS)
ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/1/2014

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Pinebridge Investment Partners LLC ("Pinebridge") and Pinebridge GEM II, Ltd. ("GEM II Advisor" and, together with Pinebridge, "Plaintiffs") bring this action seeking declaratory and injunctive relief against Defendant Abdulaziz Geylan Zapsu ("Defendant"). Specifically, Plaintiffs seek a declaration that they are not bound to arbitrate with Defendant and an injunction barring Defendant from pursuing or taking any steps in furtherance of arbitration against Plaintiffs under both New York law and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 38.[1]  Now before the Court is Plaintiffs' motion for a preliminary injunction.  For the reasons that follow, Plaintiffs' motion is denied.

---

[1] The Convention "was enacted and opened for signature in New York City on June 10, 1958, and entered into force in the United States after ratification on December 29, 1970, as codified at 9 U.S.C. §§ 201–208." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 n.1 (2d Cir. 1997).

I. BACKGROUND

A. Facts[2]

Pinebridge is a Delaware company with offices in New York.  (Compl. ¶ 4; *see also* Declaration of John Leone, dated Aug. 13, 2014, Doc. No. 12 ("Leone Decl.") ¶¶ 4–5.)  Non-party Pinebridge Global Emerging Markets Partners II, L.P. ("GEM II Fund") is a private equity fund organized under Cayman law.  (Compl. ¶ 9.)  GEM II Advisor is a Cayman Islands "exempted limited company" with offices in New York (Compl. ¶ 5), which serves as GEM II Fund's investment advisor (Compl. ¶ 9).  Defendant is a resident and citizen of Turkey (Compl. ¶ 6), and also has German citizenship (Zapsu Juris. Decl. ¶ 1).

In May 2006, Defendant and GEM II Fund, as well as other parties not involved in the instant action, entered into a Non-Competition Agreement (the "NCA") in connection with GEM II Fund's investment in a chain of retail stores in Turkey.  (Declaration of Abdulaziz Geylan Zapsu, dated Aug. 28, 2014, Doc. No. 34 ("Zapsu Decl.")) ¶¶ 6–7; Compl. ¶ 2.)  The NCA includes a choice-of-law provision selecting United Kingdom law to govern its terms and an arbitration clause requiring that all disputes arising from the NCA be resolved before an International Chamber of Commerce ("ICC") arbitration panel in London.  (Declaration of Stan Chiueh, dated Aug. 13, 2014, Doc. No. 13 ("Chiueh Decl.") Ex. B § 7.)  None of the Plaintiffs signed the NCA.  (Compl. ¶ 2.)  On May 16, 2014, pursuant to the NCA, Defendant commenced arbitration in London with the ICC by filing a Request for Arbitration, naming Plaintiffs and GEM II Fund as respondents.  (Chiueh Decl. ¶ 3.)  Thereafter, on June 20, 2014, Plaintiffs sent a

---

[2] The following facts are taken from the Complaint (Doc. No. 7 ("Compl.")), Defendant's declaration filed in support of his contemplated motion to dismiss (Declaration of Abdulaziz Geylan Zapsu, dated Aug. 26, 2014, Doc. No. 33 ("Zapsu Juris. Decl.")), as well as Plaintiffs' memorandum of law in support of their motion for preliminary injunction (Doc. No. 11 ("Mem.")), Defendant's amended opposition brief (Doc. No. 53 ("Opp'n")), Plaintiffs' reply brief (Doc. No. 40 ("Reply")), and the declarations and exhibits filed in conjunction therewith.  In deciding this motion, the Court also considered the parties' statements at the hearing on September 19, 2014.  (Preliminary Injunction Hearing Transcript, Sept. 19, 2014, Doc. No. 57 ("PI Hr'g Tr.").)

letter to the ICC Secretariat, objecting to the ICC's exercise of jurisdiction over Plaintiffs and requesting that the Secretary General refer the question of jurisdiction to the International Court of Arbitration of the ICC. (Chiueh Decl. Ex. E.) On July 7, 2014, the ICC Secretariat denied that request and notified the parties that the arbitral tribunal in London would determine any jurisdictional issues. (Chiueh Decl. Ex. G.) The three-member arbitral tribunal has not yet been constituted. (Compl. ¶ 3.)

### B. Procedural History

Plaintiffs commenced this action by filing a complaint under seal on August 13, 2014. (Doc. No. 7.) On the same date, Plaintiffs also moved for a preliminary injunction (Doc. Nos. 10–13), and, on August 15, 2014, the Court issued an Order to Show Cause why a preliminary injunction should not be issued (Doc. No. 16). On August 22, 2014, the Court unsealed this case. (Doc. No. 5.) Defendant filed his opposition on August 29, 2014 (Doc. Nos. 32–35), and Plaintiffs replied on September 12, 2014 (Doc. Nos. 40–42). Pursuant to the Court's September 17, 2014 Order (Doc. No. 52), Defendant filed an amended brief and declaration in opposition to the instant motion on September 18, 2014 (Doc. Nos. 53–54). Thereafter, the Court held oral argument on September 19, 2014. (*See* PI Hr'g Tr.) The parties have also filed pre-motion letters concerning Defendant's contemplated motion to dismiss. (Doc. Nos. 24, 30.)

### II. LEGAL STANDARD

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'" *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Second Circuit has

also indicated that the first requirement – likelihood of success on the merits – need not be shown if a plaintiff presents a "sufficiently serious question[] going to the merits to make [it] a fair ground for litigation and [the] balance of hardships tip[s] decidedly in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010).

However, courts must first be satisfied that the requirements of both subject matter and personal jurisdiction are met before considering the elements of any request for a preliminary injunction. The law is clear that courts must determine, as a threshold matter, whether subject matter jurisdiction exists before turning to any resolution of claims on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (citation and internal quotation marks omitted)). Similarly, "[a] court must have in personam jurisdiction over a party *before* it can validly enter even an interlocutory injunction against him." *Visual Scis., Inc. v. Integrated Commc'ns, Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) (emphasis added); *see also Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F. Supp. 2d 453, 456 (S.D.N.Y. 1999) ("Before entering an order of preliminary injunction, jurisdiction over the defendant must be 'clearly established.'" (quoting *Weitzman v. Stein*, 897 F.2d 653, 658–59 (2d Cir. 1990))). "A prima facie showing of jurisdiction will not suffice . . . where a plaintiff seeks preliminary injunctive relief." *Visual Scis., Inc.*, 660 F.2d at 59. Thus, where a party's jurisdictional challenge is raised in the context of a motion for a preliminary injunction, "the plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Id.* (citation and internal quotation marks omitted).

4

III. DISCUSSION

In addition to the substantive grounds on which Defendant opposes Plaintiffs' motion for a preliminary injunction, Defendant contends that (1) the Court is without subject matter jurisdiction to enjoin the arbitration in London (*see* Opp'n at 10–16), and (2) Plaintiffs have not met their burden of establishing that an exercise of personal jurisdiction over him would be proper (*see id.* at 5–10).

With respect to subject matter jurisdiction – and, more precisely, the issue of whether the New York Convention empowers federal courts in the United States to stay a foreign arbitration – the Second Circuit has expressly declined to decide this matter, which remains an open question. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) ("Given [the] strong policy in favor of arbitration, and the lack of express authorization to stay arbitrations under the New York Convention, the FAA, or the BIT, Chevron asserts that courts lack the power to stay BIT arbitration. That is an open question in our Circuit."); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 266 n.3 (2d Cir. 1996) ("Because we find that subject matter jurisdiction is lacking, we do not need to decide whether the FAA gives federal courts the power to stay [foreign] arbitration proceedings."), *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49 (2009). However, where, as here, a party raises multiple challenges to a court's jurisdiction, courts are not required to address them in any particular order. *See Ruhrgas AG. v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("While *Steel Co.* reasoned that subject matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues."); *see also Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("*Steel Co.* makes clear that we are not bound to decide any particular jurisdictional question before any other." (citing *Ruhrgas*, 526 U.S. at 584)); *Carpenter v. Minister of Justice*, 487 F. App'x 669, 670 (2d Cir. 2012) ("[T]he [district] court

5

was not required to consider whether it had subject matter jurisdiction over [the plaintiff's] claims prior to considering whether it had personal jurisdiction over the defendants." (citations omitted)). Therefore, the Court will first address Defendant's challenge based on a lack of personal jurisdiction, and since the Court ultimately finds that Plaintiffs have not met their burden of showing that an exercise of personal jurisdiction over Defendant would comport with the United States Constitution, the Court need not address Defendant's arguments concerning the lack of subject matter jurisdiction.

### A. Applicable Law

Personal jurisdiction over a non-resident defendant is typically determined by reference to "the law of the state in which the federal court sits – subject, of course, to certain constitutional limitations of due process." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). However, in cases involving federal claims outside the jurisdiction of state courts, Rule 4(k)(2) of the Federal Rules of Civil Procedure provides the basis for exercising jurisdiction. Rule 4(k)(2), which "was specifically designed to correct a gap in the enforcement of federal law in international cases," permits federal courts to exercise personal jurisdiction if three requirements are met: "(1) the claim must arise under federal law; (2) the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction must be consistent with the United States constitution and laws." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126, 127 (2d Cir. 2008) (citations and internal quotation marks omitted).

With respect to the third prong, the constitutional analysis, "[t]he due process test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry. The court must first determine whether the defendant has sufficient

contacts with the forum . . . to justify the court's exercise of personal jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citations omitted).  "If such contacts are found, the court may assert personal jurisdiction so long as 'it is reasonable [to do so] under the circumstances of the particular case.'" *SEC v. Softpoint, Inc.*, No. 95 Civ. 2951 (GEL), 2001 WL 43611, at *2 (S.D.N.Y. Jan 18, 2001) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that due process requires that each defendant must have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" (citation and internal quotation marks omitted)).  Where, as here, a court determines that minimum contacts with the forum are lacking, the court need not consider the reasonableness of exercising jurisdiction over the defendant. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Metro. Life Ins. Co.*, 84 F.3d at 568–69.

In judging minimum contacts under the standard set forth in *International Shoe* and its progeny, courts focus on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citation and internal quotation marks omitted).  "The leading Supreme Court cases defining the constitutional limits of the initial minimum contacts inquiry arose in state courts or in federal diversity cases." *Softpoint*, 2001 WL 43611, at *3 (collecting cases); *see, e.g., Burger King Corp.*, 471 U.S. at 471–76; *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 293–94 (1980).  "In those circumstances, there is no question that the pertinent referent is the Fourteenth Amendment and that the minimum contacts in question are those with the forum state." *SEC v. Morton*, No. 10 Civ. 1720 (LAK) (MHD), 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011), *adopted*, No. 10 Civ. 1720 (LAK) (MHD), Doc. No. 102, (S.D.N.Y. Nov. 3, 2011).  "When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction

and nation-wide service of process, however, the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state." *Id.* (collecting cases); *accord Softpoint*, 2001 WL 43611, at *5; *see, e.g.*, *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998); *SEC v. Unifund*, 910 F.2d 1028, 1033 (2d Cir. 1990); *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 314 (2d Cir. 1981), *overruled on other grounds by Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 398–401 (2d Cir. 2009); *Mariash v. Morrill*, 496 F.2d 1138, 1143–44 (2d Cir. 1974); *see also In re Oil Spill by Amoco Cadiz off Coast of France Mar. 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992) ("When the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation. [T]he due process clause requires only that the defendant possess sufficient contacts with the United States." (internal quotation marks omitted)).

Although a defendant may "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . [j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum . . . ." *Burger King*, 471 U.S. at 475 (emphasis in original). Notably, the Supreme Court has recently emphasized that "it is the defendant's *actions*, not his expectations, that empower a [forum's] courts to subject him to judgment." *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011) (emphasis added) ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."). Thus, although "[i]t long has been recognized that effects in the United States attributable to conduct abroad may be sufficient predicate for the exercise of

8

personal jurisdiction over the actor," *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 456 (S.D.N.Y. 2005), "'foreseeability' *alone* has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *World-Wide Volkswagen*, 444 U.S. at 295 (emphasis added).   Accordingly, to square these principles and for a court to exercise jurisdiction over a foreign defendant based upon effects in the United States, a foreign defendant's activity in relation to the United States must be "sufficiently extensive and regular to make [the] possibility [of litigation in the United States] a foreseeable risk of the business." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 n.11 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010);[3] *accord In re Parmalat Sec. Litig.*, 376 F. Supp. 2d at 455 (explaining that the questions for determining minimum contacts of an individual foreign defendant with the United States are whether that defendant's "actions caused effects in the United States, whether those effects were direct and foreseeable results of those actions, and whether []he knew or had good reason to know that [his] conduct would have effects here").   This so-called effects test, which is derived from *Calder v. Jones*, 465 U.S. 783 (1984), "must be applied with caution, particularly in an international context," *Leasco*, 468 F.2d at 1341.

### B. Analysis

Plaintiffs contend that exercising personal jurisdiction over Defendant here would be proper because Defendant's actions were expressly directed at and caused harm to Plaintiffs in the United States.   Specifically, Plaintiffs argue that the "intentional wrong here is the wrongful commencement and prosecution of an arbitration against Plaintiffs." (Reply at 2.)   Plaintiffs also claim that Defendant's presence in the United States beginning in June 2014 for approximately

---

[3] The Supreme Court's decision in *Morrison* – which addressed the extraterritorial reach of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) – did not address personal jurisdiction.   561 U.S. at 254.

three months – for the purpose of seeking medical treatment (Zapsu Juris. Decl. ¶ 12.c) – provides an additional basis for exercising personal jurisdiction over Defendant. (*See* Reply at 2–3.) The Court disagrees.

First, the mere fact that the *effects* of Defendant's commencement of arbitration against Plaintiffs may have been borne by Plaintiffs in the United States does not justify an exercise of personal jurisdiction over Defendant. Rather, the proper analytical focus is on the nexus between a defendant's actions and the forum. As the Supreme Court recently stated in *Walden v. Fiore*, "mere injury to a forum resident is not a sufficient connection to a forum . . . [, and r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact *with the forum* . . . ." 134 S. Ct. 1115, 1125 (2014) (emphasis added). In discussing the *Calder* effects test, the Supreme Court in *Walden* noted that "the reputation-based 'effects' of the alleged libel [in *Calder*] connected the defendants to California[, the forum], not just to the plaintiff." *Id.* at 1124–25; *see also id.* at 1125 ("[T]he 'effects' caused by the defendants' article – *i.e.*, the injury to the plaintiff's reputation in the estimation of the California public – connected the defendants' conduct to *California*, not just to a plaintiff who lived there." (emphasis in original)). Because "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," *id.* at 1123 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)), there must be some link to the forum beyond the defendant's contacts with the plaintiff. Here, Plaintiffs' reliance on the impact of Defendant's commencement of arbitration on Plaintiffs in the United States is misplaced and elides any reference to Defendant's contacts with the *forum* itself. Specifically, Defendant initiated arbitration with the ICC in Europe, prompting the ICC to serve Plaintiffs, who happened to be in the United States. (*See* Second Declaration of John Leone, dated Sept. 12, 2014, Doc. No. 42 ("Second Leone Decl.") Ex. B.) The fact that "Plaintiffs are headquartered and operate in New

York, and so they suffer harm here in the U.S.," focuses solely on the relationship between the parties, rather than Defendant's relationship with the United States as a forum, and does not suffice to establish a basis for the Court to exercise personal jurisdiction over Defendant.

Second, Defendant's retention of a law firm in the United States – McDermott Will & Emery LLP ("McDermott") – does not constitute the kind of purposeful availment of doing business in the United States that would render an exercise of personal jurisdiction over Defendant proper.   In addition to representing Defendant in the instant action, McDermott represents Defendant in connection with the arbitration against Plaintiffs in London.   (*See* Zapsu Juris. Decl. ¶ 18.)[4]   In that capacity, McDermott conducted meetings with Defendant in Turkey (Zapsu Juris. Decl ¶ 18), notified Plaintiffs' counsel that the firm had commenced the aforementioned arbitration on Defendant's behalf (Second Leone Decl. ¶ 5), sought financial information from Plaintiffs in conjunction with the arbitration (Declaration of Michael Kendall, dated Sept. 18, 2014, Doc. No. 54 ("Kendall Decl.") Ex. I), and prepared a submission to the ICC in opposition to Plaintiffs' jurisdictional challenges to arbitration (Second Declaration of Stan Chiueh, dated Sept. 12, 2014, Doc. No. 41 ("Second Chiueh Decl.") Ex. A at 2–3). Additionally, during Defendant's visit to the United States in June 2014 for the purpose of obtaining medical treatment, Defendant met with a McDermott attorney and long-time personal friend, Mr. Michael Kendall, and "spent about one hour discussing the pending London arbitration." (Zapsu Juris. Decl. ¶ 19.)  Those activities with McDermott were in furtherance of Defendant's initiation of arbitration in London, which was commenced pursuant to a contract – the NCA – concerning a Turkish investment governed by United Kingdom law.  Moreover, the harmful effects that Plaintiffs seek to remedy in this action flow from being haled into an

---

[4] McDermott serves with London-based attorneys of Weil, Gotshal & Manges LLP as co-counsel to Defendant in the arbitration. (*See, e.g.*, Compl. Ex. A.)

11

arbitration in London, and Defendant's retention of an American law firm was simply a means of accomplishing, and ancillary to, his goal of forcing Plaintiffs to arbitrate abroad.   Thus, Plaintiffs' claims here, for injunctive and declaratory relief, arise out of Defendant's initiation of arbitration, not Defendant's interactions with McDermott and, more broadly, the United States. Consequently, the Court finds that Defendant's contacts with the United States through McDermott are too "attenuated" to constitute a "substantial connection" with the forum. *Burger King*, 471 U.S. at 475; *see also URS Corp. v. Lebanese Co. for Dev. & Reconstr. Cent. Dist. SAL*, 512 F. Supp. 2d 199, 202–05, 216–217 (D. Del. 2007) (declining to exercise jurisdiction over Lebanese defendant in action seeking to enjoin pending arbitration commenced in Paris, implicitly rejecting argument that domestic plaintiff being subjected to foreign arbitration is sufficient to provide court with personal jurisdiction over foreign defendant).

Lastly, tucked in a footnote at the end of Plaintiffs' discussion of the minimum contacts inquiry in their Reply, Plaintiffs meekly contend that Defendant's United States contacts are sufficient to establish general jurisdiction. (*See* Reply at 3 n.3 ("[Defendant's] years as a director of a U.S. company, frequent travel [to the United States], and uninterrupted residencies over months to access the U.S. medical system . . . also establish general personal jurisdiction.").) However, when dealing with an individual defendant, "the paradigm forum for the exercise of personal jurisdiction is the individual's domicile," and, in any event, Defendant's sporadic contacts with the United States over the years are far from "sufficiently continuous and systematic to justify the exercise of general jurisdiction over claims unrelated to those contacts." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (citation and internal quotation marks omitted).  Defendant's contacts include intermittent travel to the United States, principally to receive medical care (Zapsu Juris. Decl ¶ 11) – including approximately five trips between 2005 and April 2012 (*id.* ¶ 13) and three trips since then (*id.* ¶ 12) – approximately five

business trips between 1994 and 2005 in connection with Defendant's involvement with a Turkish supermarket business (*id.* ¶¶ 15–16), and a visit with individuals associated with Plaintiffs in 2008 (*id.* ¶ 17.a). Defendant also served nominally as chairman of Balsu USA from December 2005 until May 2008. (*Id.* ¶¶ 20–24.) Having carefully reviewed the record submitted in connection with this motion, the Court has little difficulty finding that Defendant's contacts with the United States are insufficient to permit an exercise of jurisdiction under a theory of general jurisdiction.

### III. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have not met their burden of establishing that an exercise of personal jurisdiction over Defendant would be proper. Accordingly, the Court denies Plaintiffs' motion for a preliminary injunction. Defendant has also filed a pre-motion letter seeking leave to file a motion to dismiss. (Doc. No. 24.) In light of the Court's finding regarding the Plaintiffs' inability to demonstrate that an exercise of personal jurisdiction over Defendant would be proper at this juncture, the parties shall submit a joint letter by December 8, 2014 apprising the Court of whether (1) additional jurisdictional discovery is desired and, if so, proposing a timeline for completing that limited discovery; and (2) additional briefing concerning the contemplated motion to dismiss is necessary and, if so, proposing a briefing schedule.

SO ORDERED.

Dated:     November 28, 2014
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE